# FRANKLIN COUNTY,

[Continued from page 156.]

## HIRAM H. SAFFORD *v.* BINGHAM KINSLEY.

### *Agency.*

A refusal, by an agent, to deliver to the principal, goods purchased with funds furnished by the principal, entitles the principal to demand and recover of the agent the funds placed in his hands.

A refusal, except upon terms or conditions the other party is not bound to accept, is equivalent to an absolute refusal.

The conduct of a party may amount to a refusal. It need not be in words.

It is the duty of an agent, who buys goods on commission, to be delivered at a specified place, to separate them from goods of his own of the same kind, left at the same place, and if he neglects, on request, to perform this duty, at the same time claiming that the principal shall take the whole, his conduct amounts to such a refusal to deliver the goods he purchased on commission, as will enable the principal to recover the funds he left with the agent to purchase the goods.

A. employed B. to buy, for him, certain lots of butter. B. bought these lots and others, and left the whole together at the railway station, the agreed place of delivery, and claimed that A. should take lots he, in fact, did not order to be purchased. A. wrote B. to meet him at the station, and designate the butter purchased according to order. To this letter B. paid no attention. A. made no attempt to pick out the lots by the marks upon the boxes. It did not appear but he might, by this means, have selected the lots he had directed B. to buy. *Held,* 1. That the request made of the agent was reasonable. 2. That the agent's neglect to comply with it, was equivalent to a refusal to let the principal have the butter unless he would take with it lots he had not authorized the agent to buy. 3. That the principal was not bound to rely on the marks upon the boxes, or to take upon himself the risk of attempting to separate the lots bought by order, from those bought without order. 4. That the principal, A., was entitled to demand and recover of the agent B., the funds placed in his hands to purchase the butter.

ASSUMPSIT to recover for money put into the hands of the defendant for buying butter for the plaintiff. The defendant pleaded the general issue, and an off-set, and gave notice of special matter of defense. Trial by jury, September Term, 1867, WILSON, J., presiding.

The plaintiff introduced testimony tending to prove, that on the 28th day of October, (Saturday,) 1865, he delivered to the defendant, four hundred dollars, with which to purchase certain butter in the defendant's vicinity for the plaintiff; that he told the defendant whose butter he wanted to purchase; that the plaintiff told the defendant for whom the plaintiff was buying butter; that he wanted nothing but good butter, and tending to prove that the plaintiff did not direct or authorize the defendant to purchase butter of any person except persons named by the plaintiff; that the defendant then agreed to purchase said butter for the plaintiff, and deliver it at Georgia depot by the then next Tuesday, and that the plaintiff agreed to pay the defendant a commission of fifty cents per hundred for buying, and twenty-five cents per hundred for delivering said butter at said depot.

It appeared that the parties had an interview in relation to the butter, at St. Albans, on the next Thursday, the day on which the defendant finished delivering the butter, when the plaintiff learned from the defendant's statement, that he had purchased butter of men whose butter the plaintiff knew nothing about, and of some men whose butter he did know about, and did not want. The plaintiff was acquainted with butter made by the persons of whom he directed the defendant to purchase, and told the defendant, on that Thursday, he should not take the butter he did not direct him, the defendant, to buy.

The plaintiff introduced testimony tending to show, that on Saturday of the same week, he went to the depot, at Georgia, and examined five or six tubs of the butter, and found that some of it was not first quality of butter; that on that Saturday, the plaintiff wrote a letter to the defendant in relation to the butter, which the defendant admitted· he received on the next Monday, asking the defendant to meet the plaintiff, at the Georgia depot, and he, the

plaintiff, would select and take the butter he directed the defendant to buy, or he might keep the butter, and pay back to the plaintiff the four hundred dollars he let him have.   The plaintiff testified that the defendant did not answer said letter; that after the plaintiff wrote said letter, he heard nothing from the defendant in relation to butter, until some time after the  defendant sent the butter to market, and that the plaintiff, after he sent said letter to the  defendant, exercised no contról over the butter, and gave no directions in relation to it.

The plaintiff introduced testimony tending to prove, that sometime towards the next spring, the parties met at Fairfax, for the purpose of settling; that the plaintiff claimed the defendant should pay the plaintiff the four hundred dollars, according to the offer contained in the plaintiff's said letter; that the defendant then stated to the plaintiff, that there was a loss on the butter of three hundred dollars; that the defendant said he would pay the plaintiff one hundred dollars, which was all the  defendant realized from the butter, after  paying expenses ; that the defendant refused to pay any more, and the plaintiff refused to settle for one hundred dollars, but told the defendant he might pay a hundred dollars at any time he was ready to pay it, and the plaintiff would apply it on the claim, and that the defendant might pay the balance along when he could pay it; that the plaintiff then told the defendant he would not take a hundred dollars in full of the claim; that some time after said interview at Fairfax, the defendant, in the absence of the plaintiff, left with the plaintiff's wife, one hundred dollars, (being the one hundred dollars charged in the defendant's specification,) who kept it until about the time of this trial, when she gave it to the plaintiff.   There was no evidence in the case, tending to show that the one hundred dollars was left for, or paid to the plaintiff on condition that if the plaintiff received it, he received it in full of his claim, and on the trial of the case, the one hundred dollars was treated merely as so much money to apply on any just claim the plaintiff had against the defendant.

It was  conceded by the defendant, that on the 28th October, 1865, the plaintiff employed the defendant, as agent for the plaintiff, to buy butter for the plaintiff; that the plaintiff let the defendant have four hundred dollars to pay out for butter; that the defendant, at that

time, told the plaintiff he, (the defendant,) would furnish some money, and pay the balance for the butter, and the plaintiff might pay the defendant when the butter was delivered, or when the defendant got the butter together, and had informed the plaintiff what it cost, and that the defendant was to have fifty cents per hundred for buying, and twenty-five cents per hundred for delivering the butter at Georgia depot.

It appeared that the whole number of tubs of butter the defendant purchased of the persons of whom the plaintiff claimed he directed the defendant to purchase, was forty-five, and it. also appeared that the defendant purchased twenty-six tubs of butter of the following named persons, viz. : V. E. Chase, J. R. Montague, Benton Leach, P. Conley, C. W. Scott and R. H. Case, which twenty-six tubs the plaintiff claimed, and his testimony tended to show he did not direct the defendant to purchase, nor agree to take it.

The defendant testified that the plaintiff, on that Saturday, did not pay him his charges on the butter, and that on the next Monday, the defendant went to the depot at Georgia, and found the butter all there, and told Mr. Chellis not to ship the butter without a written order from the defendant; that on his return home, on that day, he found a letter at his house from the plaintiff in relation to the butter, it being the letter written by the plaintiff the Saturday before, referred to in the plaintiff's testimony.

It appeared that the defendant, within a day or two after he received said letter from the plaintiff, shipped all said butter to Ballue & Hibbard, of Boston, and they sold it for the defendant, and rendered their account of the sales to the defendant.

There was no evidence in the case tending to show that the defendant consulted with the plaintiff in relation to sending said butter to market, nor tending to show that the plaintiff, after he sent said letter to the defendant, gave any directions, or made any offer to the defendant in relation to the butter, except as contained in said letter.

There was other evidence on both sides not material to be stated.

In relation to the question, whether the defendant purchased any butter the plaintiff did not authorize or direct the defendant to pur-

chase, excepting the Case butter, and whether the plaintiff would be
entitled to recover the four hundred dollars, or the balance of the
four hundred dollars, deducting the one hundred dollars paid to the
plaintiff, the court charged the jury, among other things not excepted
to, " that if they find that the plaintiff directed the defendant to buy
only the butter which the plaintiff in his testimony stated he directed
the defendant to buy, and that the plaintiff did not authorize or
direct the defendant to buy butter of V. E. Chase, J. R. Montague,
Benton Leach, P. Conley, C. W. Scott, nor of either of them, nor
agree to take their butter, and find that the plaintiff, after he was
informed or learned what butter the defendant had purchased, and
before the defendant shipped the butter to market, wrote to the
defendant that he, (the plaintiff,) would take the butter he authorized
or directed the defendant to purchase, and find that the plaintiff, in
that letter, requested the defendant to meet the plaintiff at the depot,
where the butter was at that time, for the purpose of selecting the
butter which the plaintiff had authorized or directed the defendant to
purchase, and also find that said letter contained an offer by the
plaintiff, that the defendant might, (if he chose,) keep the butter and
pay back to the plaintiff the four hundred dollars, then the plaintiff
will be entitled to recover the four hundred dollars and interest,
deducting the one hundred dollars which the defendant has paid, and
the interest on the same from the time of such payment."

To the charge as above detailed, the defendant excepted. The
court gave such further instructions to the jury as the case called
for,—to which no exception was taken.

Verdict for the plaintiff. Damages, three hundred and thirty-five
dollars and forty cents.

*H. S. Royce* and *Benton & Wilson*, for the defendant.

*Dewey & Noble*, for the plaintiff.

The opinion of the court was delivered by
STEELE, J.  The plaintiff employed the·defendant to purchase
butter for him.  The jury have found that twenty-six of the seventy-

one tubs he purchased were bought contrary to the plaintiff's orders. The verdict also settles the fact that the plaintiff did not, after the purchase, promise or agree to accept the butter which was bought without authority, but wrote the defendant, in substance, " meet me at the Georgia depot and I will select and take the butter I directed you to buy, or you may keep the butter and pay back to me the four hundred dollars I let you have." The ruling of the county court now here for revision, was in effect that upon these facts being established, enough other facts were undisputed to entitle the plaintiff to recover the unpaid balance of the four hundred dollars for which the jury gave him a verdict. The only question then is, whether, upon the conceded facts and these facts found by the jury, he was legally entitled to the verdict he obtained.

It is very clear that the plaintiff was not bound to take the twenty-six tubs he did not authorize the defendant to buy. It is equally clear that the plaintiff was bound to take the forty-five tubs he did authorize the defendant to buy. But the obligation of the plaintiff to take these forty-five tubs was only co-extensive with the obligation of the defendant to let him have them. If the defendant's conduct amounted to refusing the plaintiff permission to take them, it does not lie in his mouth to complain that the plaintiff did not take them in spite of him. If he refused to use the plaintiff's money as directed for the plaintiff's benefit, the plaintiff would be as clearly entitled to the recovery of it as if he had declined to use it at all.

Nor do the facts show such a case. On Thursday, the defendant, who for a stipulated price, was to deliver at the railway station the butter which he should buy on commission, drew to that agreed place of delivery the whole seventy-one tubs and left them there together.

On the same day he called on the plaintiff at St. Albans, and informed him he had left the seventy-one tubs there for him, and claimed and insisted that the whole was purchased in accordance with the plaintiff's directions, and that the plaintiff was to take the whole, or at least all but the last lot. This the plaintiff was not bound to do. On Saturday the plaintiff examined the butter and found that a considerable part of it was butter which the defend-

ant was not authorized to buy. He immediately wrote the defendant to meet him at the Georgia depot to select the butter which he directed the defendant to buy, and offered to take that butter. To this letter, which was received on Monday, the defendant made no answer and paid no attention, though persisting in his original claim that the plaintiff should take all the butter but the Case lot. In the time which intervened between the plaintiff's writing the letter on Saturday and its reception by the defendant on Monday, the defendant had directed the station agent to hold the butter subject to his order.

The conduct of the defendant, instead of amounting to an offer of the forty-five tubs, very manifestly was equivalent to forbidding the plaintiff to take it until he should pay all charges and commissions on more than the forty-five tubs. The defendant now insists that the plaintiff should have picked out of the seventy-one tubs the forty-five he was under obligation to receive, and, after tendering the charges and commissions on them, have taken them unpermitted by the defendant; and claims that it does not appear by the bill of exceptions but he could have done this by the marks on the boxes. We do not think the defendant was bound to assert his right in this manner, even though he might have asserted it without a breach of the peace, and after what had occurred he was not bound to trust to the marks which the defendant had left upon the tubs. He was under no obligation to take upon himself the risk of picking out the tubs.

It was the agent's duty to designate the property which he had purchased for his principal, and there was nothing unreasonable in the principal's requiring the agent to come to the Georgia depot to complete what he should have done when he left the property there. It certainly need not be expected that the plaintiff should carry the butter back to the defendant's residence to have it done, and after Monday, the plaintiff could not have obtained it without an order from the defendant, even for that purpose.

The defendant's failure to respond to the reasonable request of the plaintiff, that he would meet him at the station and designate the butter, which was bought as the plaintiff directed, and which the plaintiff offered to take, amounted to a refusal to the plaintiff to let

him have that butter except in the only manner in which he had ever offered it, that is, with other butter which the plaintiff was not bound to receive. A refusal, except upon a condition the plaintiff was not bound to accept, has the same effect as an absolute refusal, and the plaintiff was entitled to treat it as an entire repudiation by the agent of his agreement, and to sue for and recover the money which he had advanced to the defendant towards making the purchase. Upon this ground the plaintiff is entitled to an affirmance of the judgment in his favor, entirely independent of the consideration that the defendant afterwards took the butter, and that the plaintiff's letter contained an offer that he might.

Judgment affirmed.